IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:11-CR-166** |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| **DAMIEN HAMMONDS,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

The court sentenced defendant Damien Hammonds ("Hammonds") to 240 months' imprisonment for distribution and possession with intent to distribute cocaine and conspiracy to distribute cocaine. (Doc. 551). Presently before the court is Hammonds' motion (Doc. 598) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Hammonds asserts that he was denied effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. Hammonds also argues that new law effectuated by the Supreme Court of the United States in Johnson v. United States, 576 U.S. __, 135 S. Ct. 2511 (2015), invalidates his sentence. The court will deny the motion, but will refer the Johnson issue to the Federal Public Defender's Office for further consideration.

I.      **Factual Background & Procedural History**

On May 4, 2011, a grand jury returned an indictment (Doc. 1) charging Hammonds and co-defendants Michael Hansley ("Hansley"), Shawn Stern, James Hughes, Laquann Clark, Brian McCullough, Ali Brown, Marcelino Calderon-Ortiz ("Ortiz"), and Richard Rondon-Diaz with manufacturing, distributing, and possessing with intent to manufacture and distribute cocaine base and cocaine hydrochloride in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1) (Count 1) and

conspiracy to manufacture, distribute, or possess with the intent to manufacture or distribute cocaine base and cocaine hydrochloride in violation of 21 U.S.C. § 846 (Count II). On May 6, 2011, Hammonds entered a plea of not guilty to all charges. (Doc. 47). The court initially appointed Daniel M. Myshin as counsel on his behalf. (Doc. 55). William Fetterhoff ("trial counsel") ultimately represented Hammonds at trial. (Docs. 291, 295).

Hammonds' trial commenced on April 10, 2013 and continued for four days. (Docs. 559-62). Evidence at trial generally established that Hammonds was involved in a drug-trafficking conspiracy with at least four other individuals. The government adduced multiple witnesses at trial, including Hansley, Marshall Everett ("Everett"), Tracey White ("White"), and Ortiz, all associates of Hammonds. (See Docs. 560-61). Hansley testified that Hammonds was his source of drugs beginning in May 2010 until January or February of 2011. (Doc. 560 at 56:15-23, 63:8-23). He described Hammonds' prices, his own profits, and a network through which he resold Hammonds' drugs. (Id. at 69:9-72:14, 75:9-76:6). Everett testified that Hammonds sold large quantities of drugs with at least two partners, one being Hansley. (Id. at 108:4-109:21, 135:14-136:23). Everett stated that he sold drugs for Hammonds and acted as his bodyguard beginning in early 2011 and until Everett's arrest in March 2011. (Id. at 104:13-105:5, 113:1-23, 115:17-116:10, 120:25-121:21, 125:18-126:7, 139:3-21).

White testified that he bought drugs from Hammonds on several occasions between January 2011 and April 2011. (Id. at 152:22-155:1, 178:18-180:9). White described a controlled buy that law enforcement arranged between him and

Hammonds. (Id. at 155:8-161:15). White also explained his involvement in Hammonds' subsequent arrest. (Id. at 161:15-164:18, 180:21-181:23). The government entered a lab report into evidence verifying that the substance from said controlled buy was cocaine. (Doc. 561 at 3:13-6:8, 111:24-112:8). Agent William Cook ("Agent Cook") summarized the contents of the lab report. (Id. at 3:13-6:8). Ortiz testified concerning a botched attempt to purchase drugs in Puerto Rico in June 2010, as well as his drug transactions with Hammonds upon their return to Harrisburg, Pennsylvania. (Id. at 33:11-54:25, 70:15-21; see also id. at 84:18-100:21).

The government argued to the jury that this consociate testimony, coupled with evidence provided by law enforcement officers and other witnesses, proved beyond a reasonable doubt that Hammonds not only possessed and manufactured drugs, but was also involved in a single, overarching drug conspiracy from May 2010 until May 2011. (See Doc. 562 at 16:21-21:1). The jury found Hammonds guilty on both counts. (See Doc. 459).

The government filed an information charging a prior felony conviction pursuant to 21 U.S.C. § 851, triggering a mandatory minimum sentence of twenty years. (Doc. 427). The United States Probation Office thereafter prepared a presentence report. The report designates Hammonds a career offender under United States Sentencing Guidelines § 4B1.1 based on a prior felony drug conviction and an aggravated assault conviction. U.S.S.G. § 4B1.1; (PSR ¶¶ 22, 26, 28). The probation officer calculated a total offense level of 40 with a criminal history category of VI. (PSR ¶¶ 16-24, 30). At sentencing on November 21, 2013, the court overruled trial counsel's objections to the drug weight calculation, possession

of a firearm enhancement, and leadership role enhancement. (Doc. 563 at 4:18-6:12, 12:22). The court then adopted the Guidelines range of 340 months to life from the presentence report. (Id. at 12:22-13:1). After considering the salient 18 U.S.C. § 3553(a) factors, the court varied downward from the Guidelines range and imposed a sentence of 240 months, the mandatory minimum sentence. (See Doc. 551; Doc. 563 at 23:11-26:10).

Hammonds filed a notice of appeal with the United States Court of Appeals for the Third Circuit on December 3, 2013. (Doc. 554). On July 9, 2014, the Third Circuit affirmed Hammonds' conviction and sentence. United States v. Hammonds, 572 F. App'x 126, 133 (3d Cir. 2014) (nonprecedential). Hammonds timely filed the instant motion (Doc. 598) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on November 4, 2015. The motion is fully briefed (Docs. 601-02) and ripe for disposition.

## II. Legal Standard

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. In general, relief under § 2255 is afforded based on one of four grounds: (1) the sentence was imposed in violation of the Constitution or other federal laws; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. R. GOVERNING § 2255 CASES R. 1(a). "When reviewing a motion pursuant to § 2255, the court must accept the truth of the petitioner's allegations unless clearly frivolous based on the existing record." United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005).

**III.    Discussion**

Hammonds asserts several different grounds in support of his request for § 2255 relief, as follows: trial counsel was ineffective in failing to object to the admission of the lab report at trial, request proper jury instructions, challenge the increased mandatory minimum sentence, object to a fatal variance between the indictment and the government's trial evidence, and cross-examine the case agent at trial. He also contends that his designation as a career offender is improper under the residual clause of § 4B1.1. The court considers these issues *seriatim*.

**A.    Ineffective Assistance of Counsel**

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on this claim, a petitioner must demonstrate (1) that counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms and (2) that the deficient representation was prejudicial. See id. at 687-88. Conclusory allegations are insufficient to entitle a petitioner to relief under § 2255. See United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000); Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63 (1977)).

In determining whether counsel has satisfied the objective standard of reasonableness in accordance with the first prong, courts must be highly deferential toward counsel's conduct. Strickland, 466 U.S. at 689. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989).

Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90). Counsel will not be deemed ineffective for failing to raise a meritless claim. See Sanders, 165 F.3d at 253.

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. The district court need not carry out its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one. See id. at 697; United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

### 1.   *Admission of the Lab Report*

Hammonds alleges that trial counsel was ineffective by not objecting to the admission of a hearsay testimonial lab report. (Doc. 598 at 4; Doc. 602 at 16-19). Hammonds asserts that he was unable to confront his accuser, the lab technician, and claims that this violated his rights under the Confrontation Clause of the Sixth Amendment. (Doc. 602 at 16, 18)

The Supreme Court has held that lab reports analyzing suspected drug substances are testimonial evidence and consequently subject to the Confrontation Clause. Melendez-Diaz v. Massachusetts, 557 U.S. 305, 311 (2009). However, defense counsel may waive this right on his client's behalf as part of reasonable trial strategy. See United States v. Williams, 403 F. App'x 707, 708 (3d Cir. 2010)

(nonprecedential).¹  Counsel may waive this right by stipulating to the admission of hearsay testimony or choosing not to object to same at trial.  See id.; United States v. Merchant, 376 F. App'x 172, 178 (3d Cir. 2010) (nonprecedential); Fakhouri v. Thompson, No. 1:12-CV-756, 2014 WL 4165635, at *23 (M.D. Pa. Aug. 20, 2014).  In determining whether such a waiver is valid, the court weighs whether defendant dissented from counsel's decision and whether counsel's decision was part of a legitimate trial strategy.  Williams, 402 F. App'x at 708.

Trial counsel did not overtly stipulate to the use of the challenged lab report at trial, but he did not object to its submission into evidence.  (Doc. 561 at 111:24-112:8).  Trial counsel had the opportunity to cross-examine Agent Cook before the lab report was entered into evidence, (id. at 6:10-7:6), and did not object to Agent Cook's testimony concerning the report.  (Id. at 3:13-6:8).  Hammonds does not argue that he disagreed with trial counsel on this decision.  Moreover, Hammonds does not suggest that the lab technician's testimony would have differed from that of Agent Cook.  The use of the lab report thus did not violate Hammonds' Confrontation Clause rights.  See Merchant, 376 F. App'x at 178; Fakhouri, 2014 WL 4165635, at *23.  Trial counsel made a reasonable strategic decision regarding the lab report that did not prejudice Hammonds.  See Gray, 878 F.2d at 710.  The court finds no basis for § 2255 relief on Hammonds' claim.

---

¹ The court acknowledges that nonprecedential decisions are not binding upon federal district courts.  Citations to nonprecedential decisions herein reflect that the court has considered the panel's *ratio decidendi* and is persuaded by same.

### 2. *Jury Instructions Concerning the End of a Conspiracy*

Hammonds avers that trial counsel was ineffective because he did not request a jury instruction as to when a conspiracy ends. (Doc. 598 at 5). Hammonds expounds on this argument, insisting that the evidence at trial did not demonstrate the existence of a single overarching conspiracy, but instead evinced two separate conspiracies and a series of buyer-seller relationships. (See Doc. 602). He claims that the first conspiracy, his unsuccessful trip to Puerto Rico, ended when he returned to Pennsylvania. (Id. at 6). Trial counsel requested jury instructions on the existence of a single conspiracy versus multiple conspiracies, but did not include an explanation as to when a conspiracy ends. (Doc. 437). Hammonds contends that if the jury had been instructed on when a conspiracy ends, they could have found the existence of multiple conspiracies, rather than the single conspiracy charged in the indictment. (Doc. 602 at 7-8).

Hammonds' averment is unavailing. The court asked the jury to determine if Hammonds was involved in the conspiracy alleged in the indictment, specifically, a single overarching conspiracy from about May 2010 to May 2011. Jury instructions on what "ends" a conspiracy are irrelevant to this determination. The court's instructions on the interaction between conspiracies make the law abundantly clear:

> If the government failed to prove that Mr. Hammonds was a member of the conspiracy charged in the indictment then you must find Mr. Hammonds not guilty of conspiracy, even if you find that there were multiple conspiracies and that Mr. Hammonds was a member of a separate conspiracy other than the one charged. However, proof that Mr. Hammonds was a member of

8

>
> some other conspiracy would not prevent you from
> finding him guilty of the conspiracy charged in the
> indictment if you find that the government proved beyond
> a reasonable doubt that Mr. Hammonds was a member of
> the conspiracy charged.

(Doc. 562 at 113:21-114:9). Assuming *arguendo* that Hammonds is correct that the conspiracy to obtain drugs in Puerto Rico ended and was followed by a separate conspiracy to obtain drugs in Harrisburg, a reasonable jury could still convict him of a single, overarching conspiracy. Evidence that Hammonds was a member of "some other" conspiracy does not preclude a finding of an ambient conspiracy with broader objectives. (Id.) Hammonds' proposed instruction is wholly superfluous; consequently, he cannot demonstrate that the lack of this jury instruction prejudiced him in any way. The court concludes that Hammonds' ground for relief is without merit.

### 3.  *Increased Mandatory Minimum Sentence*

Hammonds maintains that trial counsel was ineffective in failing to challenge the increased mandatory minimum sentence because it was based on a prior conviction not charged in the indictment or proven to the jury. (Doc. 598 at 8). He submits that the usage of an unproven fact to increase a statutory sentence is unconstitutional. (Id.)

The Supreme Court has flatly rejected this proposition: if the fact of a prior conviction is not an element of the crime charged, then the jury need not decide whether the fact exists. See Alleyne v. United States, 570 U.S. __, 133 S. Ct. 2151, 2160 n.1, 2168 (2013); (Doc. 601 at 5); see also United States v. Lewis, 802 F.3d 449, 456 (3d Cir. 2015). Trial counsel was not ineffective for failing to raise a meritless

argument. United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999). The court consequently finds that Hammonds' claim is unsustainable.

### 4. *Fatal Variance Between the Indictment and Trial Evidence*

A variance occurs when "the evidence at the trial proves facts materially different from those alleged in the indictment." United States v. Daraio, 445 F.3d 253, 259 (3d Cir. 2006) (quoting United States v. Castro, 776 F.2d 1118, 1121 (3d Cir. 1985)). A variance is harmless unless it does not provide notice to the defendant concerning the offenses against him, otherwise prejudices the defendant, id. at 262, or "present[s] a danger that the defendant may be prosecuted a second time for the same offense." United States v. Schoenhut, 576 F.2d 1010, 1022 (3d Cir. 1978). If the indictment alleges a single conspiracy, a variance exists if the government only demonstrates the existence of multiple, unrelated conspiracies. United States v. Scott, 607 F. App'x 191, 195 (3d Cir. 2015) (quoting United States v. Kelly, 892 F.2d 255, 258 (3d Cir. 1989)).

A finding of a master conspiracy with sub-schemes does not constitute fatal variance. United States v. Smith, 789 F.2d 196, 200 (3d Cir. 1986); see also Soto v. United States, 313 F. App'x 496, 498 (3d Cir. 2008). The court will sustain the jury's verdict if "there is substantial evidence, viewed in the light most favorable to the [g]overnment, to support a finding of a single conspiracy." United States v. Perez, 280 F.3d 318, 345 (3d Cir. 2002) (citing Smith, 789 F.2d at 200). The court considers three factors when determining whether there is a single conspiracy or multiple conspiracies: (1) existence of a common goal among the conspirators; (2) an agreement that contemplates a continuous result that requires the conspirators'

10

continuous cooperation; and (3) overlap in dealings. United States v. Kemp, 500 F.3d 257, 287 (3d Cir. 2007) (quoting Kelly, 892 F.2d at 258). The government is not required to demonstrate that all participants knew one another in showing overlap. Kelly, 892 F.2d at 260.

Hammonds posits that the evidence proved the existence of two independent conspiracies between him and Ortiz (and others) to obtain cocaine, as well as a series of buyer-seller relationships. (Doc. 602 at 9-12). Hammonds' proposition is directly contradicted by the trial record. The government supported the conspiracy alleged in the indictment, ranging from May 2010 to May 2011, with evidence establishing that Hammonds conspired with Hansley from May 2010 until approximately February 2011 and others, such as Everett, from January 2011 until Hammonds' arrest on May 4, 2011. (Doc. 560 at 63:8-23, 69:9-72:14, 104:13-105:5, 113:1-23, 115:17-116:10, 120:25-121:21, 125:18-126:7, 135:14-136:23, 139:3-21, 152:22-164:18). Hansley and Everett testified that Hammonds was engaged in an extensive and continuous drug operation in Harrisburg. (Id. at 63:8-71:23, 108:4-116:10, 135:14-139:21).

Despite Hammonds' best efforts to compartmentalize his manifold enterprises, his dealings with Hansley, Everett, White, and Ortiz were all clearly connected to the common goal of distributing cocaine. See Kemp, 500 F.3d at 287. Assuming *arguendo* that the venture to obtain cocaine in Puerto Rico was a separate conspiracy, Hammonds still fails to establish a fatal variance. Proof of an overarching conspiracy with constituent sub-schemes does not constitute a fatal variance. See Smith, 789 F.2d at 200. The sub-schemes involving Ortiz—the Puerto

11

Rico trip and the drug dealing in Harrisburg—clearly overlapped with the master conspiracy, as each involved Ortiz and Hammonds furthering a common goal of distributing cocaine.  See Kemp, 500 F.3d at 287; Kelly, 892 F.2d at 260.  The evidence did not create a variance that surprised or prejudiced Hammonds.  See Daraio, 445 F.3d at 259, 262.  Trial counsel was well within the wide range of reasonable professional assistance in choosing to present a multiple conspiracy theory at trial instead of challenging the indictment.  See Gray, 878 F.2d at 710.  Hammonds' ground for relief accordingly fails.

### 5.     *Failure to Adequately Cross-Examine Case Agent*

Hammonds avers that trial counsel was ineffective in failing to cross-examine Agent Cook on certain topics.  (Doc. 598 at 10; Doc. 602 at 13).  Specifically, Hammonds challenges Agent Cook's personal knowledge of the case and states that trial counsel should have questioned Agent Cook regarding the length of time Hammonds was involved in the alleged conspiracy.  (Doc. 602 at 13-14).  Hammonds also argues that trial counsel should have asked Agent Cook about the searches he conducted on White prior and subsequent to the controlled buy.  (Id. at 15-16).

Hammonds does not demonstrate how the result of his trial would have been different had trial counsel questioned Agent Cook on these topics.  Strickland, 466 U.S. at 694.  The government did not rely on Agent Cook to establish the duration of Hammonds' conspiracy.  Agent Cook explained his reasons for searching White prior and subsequent to the controlled buy at trial.  (Doc. 560 at 194:20-195:7).  Neither avenue of questioning would have contributed new evidence.  Trial counsel's choice not to pursue these lines of questioning qualifies as a reasonable

strategic decision. See Gray, 878 F.2d at 710. Moreover, Hammonds identifies no resulting prejudice. The court denies Hammonds' motion on this ground for relief.

**B.  Effect of Johnson on Hammonds' Sentence**

In Johnson v. United States, the Supreme Court deemed the residual clause of the Armed Career Criminal Act unconstitutional. 135 S. Ct. at 2557. The Court later held that Johnson's holding applies retroactively on collateral review. See Welch v. United States, 576 U.S. __, 136 S. Ct. 1257, 1265. The Third Circuit has determined that Johnson applies with equal force to the residual clause of the career offender Guideline § 4B1.1. See United States v. Calabretta, 831 F.3d 128, 137 (3d Cir. 2016). This extension of Johnson, and its potential retroactivity, is currently before the Supreme Court. See Beckles v. United States, No. 15-8544 (argued Nov. 28, 2016).

There is no dispute that the court designated Hammonds a career offender pursuant to § 4B1.1. Hammonds' prior felony drug conviction qualifies as a predicate "controlled substance offense" as defined in § 4B1.2(b). However, the record of sentencing does not reveal whether Hammonds' predicate conviction for aggravated assault qualified under the residual clause or otherwise.

The government adjures that any Johnson argument is moot because the court varied below the career offender Guidelines range to impose the statutory mandatory minimum sentence. (Doc. 601 at 4). Nonetheless, Hammonds' career offender designation stands as part of the record of his sentence. (Doc. 563 at 12:22-13:1, 17:22-18:24). In the exercise of caution, the court will refer this aspect of Hammonds' motion to the Federal Public Defender's Office to investigate the merit

of the claim, including any latent prejudice, and to provide a supplemental brief to the court addressing this question.

## IV.  Conclusion

The court will deny Hammonds' motion (Doc. 598) except to the extent that the court refers this matter to the Federal Public Defender's Office to determine the potential impact of Johnson *sub judice*. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:   February 17, 2017