**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:11-CR-166** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **DAMIEN HAMMONDS (1),** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Defendant Damien Hammonds, through appointed counsel, moves for

compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

(Docs. 673, 675).  Hammonds asks the court to reduce his sentence to time served

based on his medical condition and his concern regarding spread of the COVID-19

virus[1] at the Brooklyn Metropolitan Detention Center ("MDC Brooklyn") where he

is currently incarcerated.  The government opposes compassionate release.  For the

reasons that follow, we will deny Hammonds' motion.

## I.   Factual Background & Procedural History

On May 4, 2011, a grand jury returned an indictment charging Hammonds

and eight codefendants with manufacturing, distributing, and possessing with

intent to manufacture and distribute cocaine base and cocaine hydrochloride in

violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1) (Count I) and conspiracy to

---

[1] The COVID-19 virus is also known as "severe acute respiratory syndrome coronavirus 2" and "SARS-CoV-2."  *Naming the coronavirus disease (COVID-19) and the virus that causes it*, WORLD HEALTH ORGANIZATION, https://www. who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it.  We refer to the virus herein as "the COVID-19 virus" and to the disease it causes as "COVID-19."

manufacture, distribute, and possess with the intent to manufacture and distribute cocaine base and cocaine hydrochloride in violation of 21 U.S.C. § 846 (Count II). (See Doc. 1).  Before trial, the government filed an information charging a prior felony conviction pursuant to 21 U.S.C. § 851, triggering a mandatory minimum sentence of 20 years.  (Doc. 427).  A jury found Hammonds guilty on both counts. (See Doc. 459).

After trial, the United States Probation Office prepared a presentence report. The report designated Hammonds a career offender under United States Sentencing Guidelines § 4B1.1 based on a prior felony drug conviction and an aggravated assault conviction.  (PSR ¶¶ 22, 26, 28).  After resolving several objections during sentencing, adopting the Guidelines range from the presentence report, and considering the 18 U.S.C. § 3553(a) factors, the court varied downward from the Guidelines range and imposed the mandatory minimum sentence of 20 years' imprisonment.  (Doc. 563 at 4:18-6:12, 12:22-13:1, 23:11-26:10; see Doc. 551). Hammonds is currently housed at MDC Brooklyn, with a projected release date of May 18, 2028.  See Find an Inmate, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (search for BOP Register Number "69972-067") (last visited July 23, 2020).

The Third Circuit Court of Appeals affirmed Hammonds' conviction and sentence.  See United States v. Hammonds, 572 F. App'x 126, 133 (3d Cir. 2014) (nonprecedential).  Hammonds then filed a motion to vacate, set aside, or correct his sentence under to 28 U.S.C. § 2255, (see Doc. 598), which we denied, see United

<u>States v. Hammonds</u>, No. 1:11-CR-166, 2017 WL 661471, at *3-6 (M.D. Pa. Feb. 17, 2017) (Conner, C.J.).

On May 1, 2020, Hammonds wrote the warden at MDC Brooklyn and asked the warden to consider seeking compassionate release on his behalf. (<u>See</u> Doc. 675-2 at 1). The warden denied that request on May 4. (<u>See id.</u> at 2). Hammonds then filed a *pro se* motion for compassionate release on May 8.[2] (Doc. 673). That same day, we appointed the Federal Public Defender to determine whether Hammonds may be eligible for such relief and, if so, to file any appropriate motion or briefing on his behalf. (Doc. 674). Appointed counsel filed a brief in support of Hammonds' *pro se* motion on June 17, (Doc. 675), and we promptly implemented an expedited briefing schedule, (Doc. 680). Hammonds' motion is now fully briefed and ripe for review. (<u>See</u> Docs. 675, 683, 684).

## II.   <u>Discussion</u>

Hammonds asks the court to reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act of 2018, § 603(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239. Section 3582(c)(1)(A)(i) allows the sentencing court to reduce a term of imprisonment if the court finds, after consideration of the Section 3553(a) factors, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

---

[2] Hammonds' *pro se* filing did not explicitly request compassionate release; rather, Hammonds asked the court to appoint counsel to determine whether he may be eligible for compassionate release. (<u>See</u> Doc. 673). We construe the *pro se* filing as a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

Both the defendant and the Director of the Bureau of Prisons ("BOP") can move for compassionate release under Section 3582(c)(1)(A). <u>See</u> <u>id.</u> § 3582(c)(1)(A). But before a defendant can move the court directly, he must either "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or wait for 30 days to lapse from the warden's receipt of a request that the BOP file such a motion. <u>Id.</u> The warden denied Hammonds' request to bring a motion on his behalf within the 30-day period, and we have no indication that this denial has been fully exhausted. (<u>See generally</u> Doc. 675-2).[3] Nevertheless, the government does not explicitly argue that Hammonds has failed to satisfy the

---

[3] Hammonds' "Request for Administrative Remedy" attached to his opening brief appears to be unrelated to the instant request for compassionate release. The request challenges the warden's determination that Hammonds is ineligible for home confinement under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020), not the compassionate release statute. (<u>See</u> Doc. 675-2 at 3).

minimum statutory requirements.[4]  (Doc. 683 at 5).  We therefore turn to the merits

of Hammonds' motion.

## A.    Extraordinary and Compelling Reasons

Hammonds contends that his medical condition and resulting vulnerability

to serious complications from COVID-19 establish extraordinary and compelling

reasons to grant compassionate release.  Hammonds claims that he has a

---

[4] The government largely glosses over the issue of administrative exhaustion, (see Doc. 683 at 5), and Hammonds construes the government's position as a concession that Section 3582's exhaustion requirement is satisfied, (see Doc. 684 at 1).  We have no evidentiary indication that Hammonds has fully exhausted administrative remedies as contemplated by Section 3582(c)(1)(A).  See 18 U.S.C. § 3582(c)(1)(A); see also United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)); United States v. Petrossi, No. 1:17-CR-192, Doc. 133 at 2 & n.1 (M.D. Pa. Apr. 28, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A) and collecting cases); Petrossi, No. 1:17-CR-192, ___ F. Supp. 3d ___, 2020 WL 1865758, at *3-4 (M.D. Pa. Apr. 14, 2020).  And, as this court recently explained, judges cannot waive Section 3582(c)(1)(A)'s statutory exhaustion requirement.  See Petrossi, 2020 WL 1865758, at *3-4.  Setting aside judicial waiver, courts are divided on whether Section 3582's exhaustion provision is a jurisdictional requirement that cannot be waived or excused by the government.  Compare United States v. Alam, 960 F.3d 831, 833-34 (6th Cir. 2020); United States v. Johnson, No. 15-CR-125, ___ F. Supp. 3d ___, 2020 WL 3041923, at *3-4 (D.D.C. May 16, 2020); United States v. Nazer, No. 18-CR-00783-2, ___ F. Supp. 3d ___, 2020 WL 2197840, at *3-4 (N.D. Ill. May 6, 2020); United States v. Haney, No. 19-CR-541, ___ F. Supp. 3d ___, 2020 WL 1821988, at *2-3 (S.D.N.Y. Apr. 13, 2020), with United States v. Baye, No. 3:12-CR-00115-RCJ, ___ F. Supp. 3d ___, 2020 WL 2857500, at *3-5 (D. Nev. June 2, 2020); United States v. Johnson, No. CR RDB-14-0441, ___ F. Supp. 3d ___, 2020 WL 1663360, at *3-4 (D. Md. Apr. 3, 2020).  Although not raised by the parties, the court has a continuing obligation to consider questions of subject-matter jurisdiction sua sponte.  See Fort Bend Cty. v. Davis, 587 U.S. ___, 139 S. Ct. 1843, 1849 (2019) (citing Gonzalez v. Thaler, 565 U.S. 134, 141 (2012)).  We need not resolve the jurisdictional question in this case. Assuming jurisdiction arguendo, Hammonds has not established that a reduction in sentence is appropriate under Section 3582(c)(1)(A)(i).  See Jordon v. Attorney Gen., 424 F.3d 320, 325 n.8 (3d Cir. 2005) (citing, inter alia, Bowers v. NCAA, 346 F.3d 402, 425 (3d Cir. 2003), and holding that when a jurisdictional limitation has a "statutory provenance," rather than a constitutional one, courts may assume jurisdiction arguendo).

neurological disorder that has caused seizures in the past and is prediabetic.  (<u>See</u> Doc. 675 at 1; <u>see generally</u> Doc. 677).  He asserts that his medical condition places him "at high risk for severe illness or death from COVID-19," that this risk is amplified in the prison setting, and that immediate release is the only way to guard against this risk and protect Hammonds' health.  (<u>See</u> Doc. 675 at 1-2, 7).

Congress delegated responsibility for defining "extraordinary and compelling reasons" for compassionate release to the United States Sentencing Commission.  <u>See</u> 28 U.S.C. § 994(t).  In Application Note 1 to Section 1B1.13 of the United States Sentencing Guidelines, the Commission identifies criteria for determining eligibility for a sentence reduction.[5]  <u>See</u> U.S.S.G. § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018).  Eligible circumstances include terminal illness as well as "a serious physical or medical condition" or "deteriorating physical or mental health because of the aging process" if the impairment "substantially diminishes" the ability to provide self-care within a correctional facility and is one from which the defendant "is not expected to recover."  <u>Id.</u> at cmt. n.1(A)(i), (A)(ii)(I), (A)(ii)(III).  A defendant may also be eligible for an age-based reduction if he is 65 or older, is experiencing "serious deterioration in physical or mental health because of the aging process," and has served the lesser of 10 years or 75 percent of

---

[5] We recognize that this policy statement has not been amended since passage of the First Step Act.  <u>See</u> <u>United States v. Kelly</u>, No. 3:13-CR-59, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (quoting <u>United States v. Perdigao</u>, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020)).  We agree with those courts to observe that Section 1B1.13 still "provides helpful guidance" even if it is no longer controlling.  <u>Id.</u> (quoting <u>United States v. Beck</u>, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019)).

his term of imprisonment.  Id. at cmt. n.1(B).  The Application Note closes with a catchall, authorizing a reduction when the Director of the BOP identifies in a particular case "an extraordinary or compelling reason other than, or in combination with," the above.  Id. at cmt. n.1(D).

The BOP has also developed internal criteria for addressing prisoner requests for compassionate release.  Of the many considerations identified in the BOP's policy statement, the only criteria potentially applicable to Hammonds are those concerning prisoners with a "debilitated medical condition."  See FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50: COMPASSIONATE RELEASE/ REDUCTION IN SENTENCE: PROCEDURES FOR IMPLEMENTATION OF 18 U.S.C. §§ 3582 AND 4205(G) at 5, https://www.bop.gov/policy/progstat/5050_050_EN.pdf (Jan. 17, 2019).  The statement provides that compassionate release should be considered for prisoners "who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover."  Id.  Specifically, the BOP will consider compassionate release if a prisoner is "[c]ompletely disabled, meaning the [prisoner] cannot carry on any self-care and is totally confined to a bed or chair; or [c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours."  Id.

Of course, neither the Sentencing Commission nor the BOP contemplated a deadly global pandemic when crafting these criteria.  Fortunately, the Third Circuit Court of Appeals had an early opportunity to provide guidance to district courts facing an inrush of compassionate release motions.  In United States v. Raia, 954 F.3d 594 (3d Cir. 2020), issued on April 2, 2020, the court observed that "the

mere existence of COVID-19 in society and the possibility that it may spread to a particular prison . . . cannot independently justify compassionate release, especially considering BOP's statutory role and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).[6] Over the past few months, district courts in both the pretrial and civil detention contexts likewise have opined that a generalized fear of the virus reaching a given institution is not a proper basis for release. See Ndir v. Doll, No. 1:20-CV-705, ___ F. Supp. 3d ___, 2020 WL 2306761, at *5 (M.D. Pa. May 8, 2020) (Conner, C.J.) (collecting cases in civil immigration detainee context); D.M. v. Barr, No. 20-4031, 2020 WL 1969893, at *5 (D.N.J. Apr. 24, 2020) (same); United States v. Anderson, No. 1:19-CR-239, 2020 WL 1953612, at *4, 5 (M.D. Pa. Apr. 23, 2020) (same in pretrial detention context). In other words, something more than a generalized concern regarding COVID-19 is required.

Hammonds asserts that his medical condition combined with the presence of the COVID-19 virus within his facility supplies the requisite "something more." The Centers for Disease Control and Prevention ("CDC") recently updated their guidance concerning who is at unique risk for severe illness from COVID-19. See *Coronavirus Disease 2019 (COVID-19): People of Any Age with Underlying Medical*

---

[6] The Third Circuit in Raia held that motions under Section 3582(c)(1)(A) cannot be brought directly in the court of appeals and that the defendant's failure to exhaust administrative remedies would render remand futile. See Raia, 954 F.3d at 596-97. Anything the court said about the merits of the motion, after its threshold jurisdictional determination, is arguably *dicta*. We are nonetheless persuaded by and agree with the court's observations as to the availability of compassionate release during the COVID-19 pandemic.

*Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-

higher-risk.html (last updated July 17, 2020).  As it relates to Hammonds, the

guidance states that people with certain neurological disorders and Type 1 diabetes

mellitus "might be at an increased risk for severe illness from COVID-19."  Id.

Individuals with Type 2 diabetes mellitus are "at increased risk of severe illness

from COVID-19."  Id.  The guidance does not speak to individuals who are

prediabetic.  See id.

Hammonds' counsel also argues that the recent "explosion of COVID-19

cases in prisons across the country"—including at his facility—increases the risk

that Hammonds will contract the disease and further justifies immediate release.

(Doc. 675 at 4).  Tragically, counsel is correct regarding the nationwide increase in

COVID-19 cases—BOP statistics establish that several federal prisons have

experienced outbreaks, and 99 prisoner deaths have been recorded to date.  See

*COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/

(select "Full breakdown and additional details") (last updated July 23, 2020).

But nationwide figures are not representative of circumstances at individual

prisons.  As of this writing, MDC Brooklyn reports no positive prisoners and only

one positive staff member.  See id.  Twelve prisoners and 41 staff members have

recovered after previously testing positive.  See id.  And this is not for want of

testing: 318 of 1514 prisoners at MDC Brooklyn have been tested for the virus.

See id. (select "Learn more about the data and view individual facility stats");

*Population Statistics*, FED. BUREAU OF PRISONS, https://www.bop.gov/mobile/

about/population_statistics.jsp (last visited July 23, 2020).  This reality, while not insignificant, does not mirror the dire situations like those that previously occurred at FCI Oakdale I, which experienced inordinately high infection and death rates in comparison to other facilities, and justified compassionate release.  See United States v. Kelly, No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104241, at *7 & nn.16-17 (citations omitted).  We thus have no objective basis to find that Hammonds is at imminent risk of being exposed to or contracting the COVID-19 virus.

Moreover, the BOP has implemented extensive efforts to prevent future outbreaks.  It has suspended most visitation, implemented screening measures for staff and prisoners, and limited contractor visits to essential services.  See *BOP Implementing Modified Operations*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 22, 2020).  Prisoner movement between facilities has been "suspended with limited exceptions."  Id.  Movement within facilities is restricted as well, with exceptions for mental health and medical treatment; certain programs and services; and access to commissary, laundry, showers, and telephones.  See id.  The BOP has also reduced its overall prison population by ramping up exercise of its authority under 18 U.S.C. § 3624(c)(2)— recently expanded by the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020)—to release certain vulnerable prisoners to home confinement.  See *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/.  The BOP reports that it has increased use of home confinement, releasing an additional 7,042 prisoners in the past three months.  Id. (last updated July 22, 2020, 3:00 p.m.).

There is also no reason to believe that the BOP cannot adequately treat Hammonds' medical condition.  We note at the outset that Hammonds' medical records do not suggest that he *currently* suffers from a neurological condition that causes him seizures.  Rather, Hammonds' records report that he informed his doctor that his last seizure was over 20 years ago.  (<u>See</u> Doc. 677 at 1).  In another more recent record, Hammonds is reported as stating that he suffered his last seizure "as a child."  (<u>See</u> <u>id.</u> at 6).  Hammonds' records also provide scant evidence to support his claim that he is prediabetic—his records merely suggest that he has a family history of diabetes.  (<u>See</u> <u>id.</u> at 4-5).  Setting aside Hammonds' current health conditions, his medical records reflect that prison medical staff are diligent about monitoring Hammonds' health status, including his potential propensity for diabetes and his history of seizures.  (<u>See generally</u> <u>id.</u> at 1-10).  There is simply no support for the intimation that the BOP is not equipped to treat Hammonds.

The information available to the court establishes that the BOP is appropriately managing Hammonds' conditions, that there presently is not a strong likelihood that he will contract the COVID-19 virus at MDC Brooklyn, and that the BOP is working hard to prevent such exposure from happening.  On these facts, we cannot conclude that the mere presence of the COVID-19 virus in MDC Brooklyn—whether on its own or in combination with Hammonds' heightened susceptibility to severe illness from COVID-19—is an "extraordinary and compelling" reason for release.

### B.      Section 3553(a) Factors

Even if we were to agree that extraordinary and compelling circumstances exist, our analysis must still be informed by the Section 3553(a) factors.[7]  See 18 U.S.C. § 3582(c)(1)(A).  Accounting for good time, Hammonds still has more than 90 months remaining on his 240-month sentence.  His crime of conviction was serious. He has a significant criminal record—one which led to his current career-offender status.  (See PSR ¶¶ 26-31).  Although we commend Hammonds' rehabilitative and educational efforts while in prison, (see Doc. 679 at 5; Doc. 675-3), we note that he has also been subject to disciplinary action while incarcerated, (see Doc. 675-5).  On balance, the Section 3553(a) factors support leaving Hammonds' existing sentence intact.

---

[7] The Section 3553(a) factors are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner"; (3) "the kinds of sentences available"; (4) the kinds of sentence and sentencing range recommended by the United States Sentencing Guidelines; (5) pertinent policy statements issued by the United States Sentencing Commission; (6) "the need to avoid unwarranted sentencing disparities" among similarly situated defendants; and (7) the need for restitution.  18 U.S.C. § 3553(a).

### III. <u>Conclusion</u>

For all of these reasons, the court will deny Hammonds' motion for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i). Our denial will be without prejudice to Hammonds' ability to refile the motion if, for example, he experiences a serious deterioration of his physical health.  An appropriate order shall issue.

/S/ Christopher C. Conner
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    July 24, 2020